❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.25-822M(NJ |
| Information about the location of the cellular telephone | ) |
| assigned call number (414) 852-7994 | ) |
| ("TARGET CELL PHONE") | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 2/28/2025 _____ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ❏x at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*    ☑ until, the facts justifying, the later specific date of _____08/12/2025_____ .

Date and time issued: _____
2/14/2025 @8:57 a.m.

*Judge's Signature*

City and state:      Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

<u>ATTACHMENT A</u>

Property to Be Searched

1.  The cellular telephone assigned cell number **(414) 852-7994 (Target Cell Phone)**, whose service provider is US Cellular, a wireless telephone service provider headquartered in Chicago, IL

2.  Information about the location of the **(414) 852-7994 (Target Cell Phone)** that is within the possession, custody, or control of US Cellular.

<u>ATTACHMENT B</u>

Particular Things to be Seized

All information about the location of the **(414) 852-7994 (Target Cell Phone)** described in Attachment A for a period of forty-five days, during all times of day and night.  "Information about the location of the **(414) 852-7994 (Target Cell Phone)** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of US Cellular, US Cellular is required to disclose the Location Information to the government.  In addition, US Cellular must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with US Cellular's services, including by initiating a signal to determine the location of **(414) 852-7994  (Target Cell Phone)** on US Cellular's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate US Cellular for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  See 18 U.S.C. § 3103a(b)(2).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information about the location of the cellular telephone<br>assigned call number (414) 852-7994<br>("TARGET CELL PHONE") | )<br>)<br>)<br>)<br>)<br>)     Case No. 25-822M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) & 846 | Distribution of a Controlled Substance, and Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See attached Affidavit

❑ Continued on the attached sheet.

☑ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* 08/12/2025 *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JARROD MAGUIRE   Digitally signed by JARROD MAGUIRE<br>Date: 2025.02.13 09:24:42 -06'00'

*Applicant's signature*

Jarrod Maguire, DEA Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means)*.

Date: 2/14/2025

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

AFFIDAVIT IN SUPPORT OF

AN APPLICATION FOR A SEARCH WARRANT

I, Jarrod Maguire, being first duly sworn, hereby depose and state as follows:

## I.  **INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal
Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) (1) (A) for information about the
location of the cellular telephone assigned cell number **(414) 852-7994 ("Target Cell
Phone")**, whose cell phone provider is US Cellular, a wireless provider headquartered at
Chicago, IL.  The Target Cell Phone is described herein, and in Attachment A, and the location
information to be seized is described herein, and in Attachment B.

2.      I have been employed as a Special Agent with the Drug Enforcement
Administration ("DEA") since June 2022 I am currently assigned to the DEA Milwaukee
District Office. As part of my duties as a DEA Special Agent, I investigate criminal violations
relating to narcotics trafficking and money laundering offenses, including criminal violations
of the Federal Controlled Substance laws, including, but not limited to Title 18, United States
Code, Sections 1956, and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848,
952 and 963.  I have been involved in electronic surveillance methods, the debriefing of
defendants, informants, and witnesses, as well as others who have knowledge of the
distribution, transportation, storage, and importation of controlled substances.

3.      Prior to my employment with the DEA, I was a Police Officer for the San Diego
Police Department from November 2017 to February 2022. Over the course of my career, I
have assisted with over 100 arrests for possession of controlled substances, being under the

influence of a controlled substance, and for possession of drug paraphernalia, and DUI. More specifically, my training and experience includes the following:

    a. I effected arrests, investigated crimes and interacted with community. I seized firearms, contraband, narcotics and identified applicable and enforceable laws. I wrote crime reports, collected evidence, analyzed data and conducted background checks pertaining to investigations. I conducted specialized plain clothes operations and surveillance for ongoing investigations and court cases. I conducted investigative vehicle stops, search warrants and pedestrian stops. I assisted Homicide, Child abuse, Narcotics, Narcotics Task Force and Area Station investigations with briefings, relaying information, operational and action planning and follow-ups pertaining to court cases. I assisted prosecuting attorneys by presenting evidence and testifying in court.

4. I have participated in complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. More specifically, my training and experience includes the following:

    a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

    b. I have experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

    c. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

    d. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

    e. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

f. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

g. I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

h. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846, have been committed, are being committed, and will be committed by the user of **(414) 852-7994 ("Target Cell Phone")** and others not yet identified. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## **PROBABLE CAUSE**

7. Since February 2024, case agents have been investigating the drug trafficking activities of Joel GONZALEZ and others. Based on information from a Source of Information (SOI), case agents identified the GONZALEZ DTO as an organization that distributes pounds of methamphetamine from Mexico to Milwaukee, Wisconsin.

3

8.     In February and March 2024, Milwaukee DEA agents conducted debriefings with a Source of Information (SOI). The SOI stated that Joel GONZALEZ, a/k/a "Jojo," an inmate at Racine Correctional Institution (RCI), has been trafficking ounces of methamphetamine into RCI by unknown means. According to the SOI, GONZALEZ claimed to have access to pounds of methamphetamine in Milwaukee, Wisconsin. The SOI further stated that GONZALEZ uses his girlfriend, Jackie GARCIA, and her sister, Nancy GARCIA, as the contact and distributor outside of RCI. The SOI stated they would be able to arrange an introduction of an undercover (UC) law enforcement officer to buy methamphetamine from the GARCIA sisters. Additionally, GONZALEZ sells approximately two to four ounces of methamphetamine for $300 an ounce. The SOI explained Jackie GARCIA and Nancy GARCIA live together and that they keep large amounts of methamphetamine on hand. GONZALEZ further related to the SOI that the GARCIA sisters receive three to four "bricks" (i.e., a pound) of methamphetamine at a time for $3,000 per "brick" from the cartel. The "bricks" are delivered via semi-trucks to the Milwaukee area with an unknown frequency. The SOI was informed that Nancy GARCIA, was hiding the methamphetamine on the south side of Milwaukee. A check with law enforcement data bases revealed that both GARCIA sisters' have a listed address of 1115 S. 19th Street, Milwaukee, Wisconsin.

9.     Case agents believe the SOI's information to be credible and reliable for the following reasons: the SOI has given case agents detailed information and corroborated information concerning individuals involved in drug trafficking, which case agents have independently verified; the SOI has provided information to agents, which directly led to the seizure of ounce quantities of narcotics; the SOI has provided information against the SOI's penal interest in that the SOI admitted his/her involvement in drug trafficking activities in the

past; and the SOI is cooperating with case agents in hope of favorable consideration regarding pending state charges.

10.     In March 2024, DEA Milwaukee agents directed the SOI to arrange a controlled purchase through Joel GONZALEZ.  GONZALEZ gave the SOI Jackie GARCIA's phone number to facilitate and deliver the agreed amount of methamphetamine. On March 7, 2024, DEA Milwaukee case agents conducted a controlled purchase of 159.6 gross grams of methamphetamine (verified through testing by the DEA North Central Laboratory) for $1,200 from Jackie GARCIA utilizing an undercover officer, TFO Patrick Coe (the UC), at 1114 S. 25th Street, Milwaukee, Wisconsin. Investigators observed Jackie GARCIA driving a red Ford Focus with Wisconsin registration ALY-4769 during the transaction. According to the Wisconsin Department of Transportation, the Ford Focus, bearing Wisconsin plate ALY-4769, was registered to Rebecca Lopez with an address of 1115 S. 19th, Milwaukee, WI.

11.     During the planning of the controlled purchase, Jackie GARCIA texted the original meet location for the methamphetamine transaction as S. 25th Street and Scott Street, but she later changed the meet location to S. 73rd Street (where she parked after the transaction). During that time, the UC received text and phone calls from an unknown female on a different phone number (suspected to be Nancy GARCIA), who coordinated the location of the transaction. During the phone call, the unknown female explained to the UC that she did not want the person selling the methamphetamine to drive from S. 25th and Scott Street to 73rd and Walker Street with the methamphetamine.  The unknown female then changed the meet location for the methamphetamine transaction to 1114 S. 25th Street.

12.     On April 9, 2024, Special Agent Jarrod Maguire spoke with the SOI via telephone to discuss the coordination of future controlled purchases. The SOI provided the agent a new

5

number – (414) 209-2589 – to contact to arrange future methamphetamine deals. The SOI stated that this number belonged to Nancy GARCIA. The SOI stated that Joel GONZALES and Jackie GARCIA are not currently speaking, and that Nancy GARCIA is the person with ties to Mexican drug-trafficking-organizations.

13.　　On April 17, 2024, the UC contacted (414) 209-2589 via text message to arrange an eight-ounce methamphetamine transaction the following day. The user of (414) 209-2589 responded, and stated that a transaction could happen, but that they could only provide four ounces of methamphetamine. The user of (414) 209-2589 stated that they would be getting more methamphetamine the following weekend. The UC indicated that was acceptable and expressed an interest in conducting the transaction on the "south side of Milwaukee," like the last purchase. The user of (414) 209-2589 agreed.

14.　　On April 18, 2024, the UC contacted the user of (414) 209-2589 via text message to reaffirm that the transaction was to occur on that day, and to settle on a time and location. During a text conversation, the user of (414) 209-2589 stated that the transaction should occur at 10:20 a.m., at 2205 S. Muskego Ave., Milwaukee, Wisconsin. The UC acknowledged, surveillance units went to that location, as well as the GARCIA sisters' two residences. Case agents, however, did not observe any movement at either residence. Prior to the controlled purchase the UC reviewed several photographs of both Nancy GARCIA and Jackie GARCIA.

15.　　Once at the location, the UC spoke to the user of (414) 209-2589 via telephone. The user of (414) 209-2589 said that they were pulling up behind the UC. At this time, the UC Coe, while still speaking to the user of (414) 209-2589 via phone call, observed a Hispanic female who he believed with a strong certainty strongly resembled Nancy GARCIA (based on a comparison to her Wisconsin driver's license photograph) driving a newer model, white,

6

Acura RDX sport utility vehicle bearing a paper tag of B27176 and talking on a phone. An unknown Hispanic female (UHF) then exited the front passenger side of the white Acura and approached the driver's side window of the UC's car. Once there, the UHF handed the UC a small "Apple Jacks" cereal box that contained four small, clear plastic bags that contained an off white/clear rock like substance that later field-tested positive for methamphetamine (later confirmed as methamphetamine by the DEA North Central Laboratory). The UHF then returned to the white Acura, which then pulled away.

16.     On May 16, 2024, at approximately 10:44 a.m., the UC texted the number 414-209-2589 (the number associated with Nancy GARCIA given to the SOI), inquiring about purchasing 12 ounces of methamphetamine for the following morning. The user of 414-209-2589 responded that the normal source of supply was out of town, and that they would have to check with a secondary source of supply. The user of 414-209-2589 indicated that they may only be able to provide the UC with 4 or 5 ounces of methamphetamine. Both parties agreed to meet the following day around 10-10:30 a.m. to conduct a methamphetamine transaction at the same location as the previous transaction (i.e., 2205 S. Muskego Ave., Milwaukee, Wisconsin).

17.     On May 17, 2024, at approximately 8:26 a.m., the UC texted (414) 209-2589 to confirm that the transaction was to occur. The user of 414-209-2589 responded that the transaction would have to occur a little later, around 12:00 p.m. At approximately 10:18 a.m., the user of 414-209-2589 texted the UC, "5 o 6 u want." The UC replied, "6." The user of 414-209-2589 responded, "bet," which is believed to indicates confirmation of the desired ounce quantity of methamphetamine. At approximately 11:29 a.m., the UC again spoke to the

7

user of (414) 209-2589 and confirmed that the transaction would happen. The UC departed for 2205 S. Muskego at approximately 11:45 a.m.

18.     Once on location, the UC called 414-209-2589 and spoke to a female who he believed to be Nancy GARCIA because she sounded like the female he had previously spoken to.  During the call, Nancy GARCIA told the UC to look for a white truck.  The UC observed a white Chevrolet Silverado (bearing Wisconsin license plate XE58288, and a magnet on the door labelled "Albor Group LLC Landscaping").  An unidentified Hispanic male (later identified as Erick VELAZQUEZ-CASTRO by the UC at a later date) exited the driver's side of the vehicle and approached the UC's vehicle.  Once at the window of the vehicle, Erick VELAZQUEZ-CASTRO gave the UC six clear, knotted plastic bags that were in a large Ziploc bag, in a tea box, in a white plastic grocery bag.  In exchange, the UC gave Erick VELAZQUEZ-CASTRO $1,800.  The six clear, knotted plastic bags contained an off white/clear, rocklike substance, which later field tested presumptive positive for methamphetamine (later confirmed to be methamphetamine by the DEA North Central Laboratory and positive friction ridge examination by South Central Laboratory).  Moments later, Erick VELAZQUEZ-CASTRO returned to the Chevrolet Silverado and re-entered the driver's side. Erick VELAZQUEZ-CASTRO then drove to the rear alleyway behind 2147a S. 24th St.  Investigators observed Erick VELAZQUEZ-CASTRO park the Chevrolet close to the same area that Nancy GARCIA parked her white Acura RDX after a previous transaction.

19.     On September 2, 2024, TFO Coe texted the number given to the SOI associated with Nancy GARCIA (414-209-2589), inquiring about purchasing a pound of methamphetamine the following morning. Nancy GARCIA called the UC and essentially

responded that she only had 6 ounces available. Both parties agreed to meet the following day for 6 ounces of methamphetamine.

20.    On September 3, 2024, at approximately 10 a.m. TFO Coe texted Nancy GARCIA to confirm the meet and the UC would be in the same area as last time around noon. Nancy GARCIA responded and confirmed by saying "bet". At approximately 11:30 a.m., agents established surveillance in the area of 2147a S. 24th Street in anticipation of Nancy GARCIA potentially coming from that location prior to meeting the UC at 2205 S Muskego Avenue. At approximately 11:45 a.m., agents established surveillance in the area of Angie's Candy Shop (2205 S. Muskego Avenue).

21.    At approximately 12:10 p.m., TFO Coe arrived at Angie's Candy Shop (2205 S Muskego Avenue) and parked. TFO Coe called Nancy GARCIA, she explained she would have someone meet him shortly. Agents monitored the live audio and video feed being transmitted by the recording devices the CS was equipped with.

23.    At approximately 12:17 p.m., agents in the area of 2147a S. 24th Street observed a gray Mercedes (bearing Wisconsin license plate ALG-7349) exit out of the alley from a parking space next to the garage. Agents observed the vehicle travel east towards 24th Street. Agents were unable to track the vehicle to the target location. Moments later, an Hispanic male with facial hair, wearing a black shirt and hat, walked up to the UC vehicle driver's window (the UC recognized the Hispanic males as Erick VELAZQUEZ-CASTRO, the same male who provided the UC methamphetamine on May 17, 2024). Through the driver's side window, Erick VELAZQUEZ-CASTRO gave the UC a black compact disc bag containing a black grocery bag with the agreed amount of methamphetamine; inside were six clear, knotted plastic bags contained an off white/clear, rocklike substance, which later field tested presumptive

9

positive for methamphetamine (later confirmed to be methamphetamine by the DEA North Central Laboratory). In exchange, the UC gave Erick VELAZQUEZ-CASTRO $1,800. Erick VELAZQUEZ-CASTRO then walked across the street and out of the agents' sight. Moments later, agents observed the gray Mercedes headed west on Grant Street and then into the alley of 2147a S. 24th Street where it was originally parked next to the garage.

24. At approximately 12:23 p.m., a black pickup truck without a front plate was observed parking next to the Mercedes in the alley. The pickup truck honked the horn on arrival. Agents confirmed that Erick VELAZQUEZ-CASTRO was the driver of the Mercedes. Erick VELAZQUEZ-CASTRO began to speak with the driver of the black pickup at the driver's side door. Erick VELAZQUEZ-CASTRO was observed entering 2147a S. 24th Street address and then walking back to the black pickup. Agents observed Erick VELAZQUEZ-CASTRO hand an unidentified item to the driver of the pickup before it drove south through the alley. Erick VELAZQUEZ-CASTRO was then observed entering the 2147a S. 24th Street residence. Agents concluded surveillance on the address and followed the black pickup. On September 3, 2024, after querying law enforcement databases and viewing photographs, TFO Coe identified Erick VELAZQUEZ-Castro (DOB of 09-04-1997) as the person who provided who previously supplied him the methamphetamine.

25. In early February 2025, TFO Ryan Foth signed up a Confidential Source ("CS") through the Milwaukee Police Department. The CS explained they would be able to order a pound of methamphetamine for $2,000 from a local drug source nicknamed "Puppet." Based on the Facebook account and pictures of "Puppet" provided by the CS, the UC (TFO Coe) recognized "Puppet" as Erick VELAZQUEZ-CASTRO. The CS gave case agents the

10

following phone number to contact Erick VELAZQUEZ-CASTRO: **(414) 852-7994 ("Target Cell Phone")**.

26.     Case agents believe the CS's information to be credible and reliable for the following reasons: the CS has given case agents detailed information and corroborated information concerning individuals involved in drug trafficking, which case agents have independently verified; the CS has provided information against the CS's penal interest in that the CS admitted his/her involvement in drug trafficking activities in the past; and the CS is cooperating with case agents in hope of favorable consideration regarding pending state charges.

27.     On February 12, 2025, TFO Foth and SA Jarrod Maguire spoke to the CS via phone call to organize the purchase of a pound of methamphetamine the following week. The CS texted Erick VALAZQUEZ-CASTRO at **(414) 852-7994 ("Target Cell Phone")** the same morning to discuss the planned drug transaction. VELAZQUEZ-CASTRO texted back using **(414) 852-7994 (Target Cell Phone)** explaining he would have the product for the drug transaction later in the week.

28.     Based on information provided by the SOI and CS, physical surveillance, and the controlled purchases, I believe that Erick VELZQUEZ-CASTRO is using **(414) 852-7994** (**Target Cell Phone**) to communicate with others to further his drug trafficking activities. Case agents believe the location information will assist in identifying his source(s) of supply, stash locations used by Erick VELAZQUEZ-CASTRO and other co-conspirators involved in his drug trafficking organization.

11

29.     In my training and experience, I have learned that US Cellular is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records.  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

30.     Based on my training and experience, I know that US Cellular can collect E-911 Phase II data about the location of **(414) 852-7994 (Target Cell Phone)**, including by initiating a signal to determine the location of **(414) 852-7994 (Target Cell Phone)** on US Cellular' s network or with such other reference points as may be reasonably available.

31.      Based on my training and experience, I know that US Cellular can collect cell-site data about the **(414) 852-7994 (Target Cell Phone)**.

12

## AUTHORIZATION REQUEST

32.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

33.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrants has been completed.  There is reasonable cause to believe that providing immediate notification of the warrants may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the **(414) 852-7994 (Target Cell Phone)** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  See 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(2).

34.     I further request that the Court direct US Cellular to disclose to the government any information described in Attachment B that is within the possession, custody, or control of US Cellular. I also request that the Court direct US Cellular to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with US Cellular's services, including by initiating a signal to determine the location of **(414) 852-**

13

**7994 (Target Cell Phone)** on US Cellular's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate US Cellular for reasonable expenses incurred in furnishing such facilities or assistance.

35.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **(414) 852-7994 (Target Cell Phone)** outside of daytime hours.

<u>ATTACHMENT A</u>

Property to Be Searched

1. The cellular telephone assigned cell number **(414) 852-7994 (Target Cell Phone)**, whose service provider is US Cellular, a wireless telephone service provider headquartered in Chicago, IL

2. Information about the location of the **(414) 852-7994 (Target Cell Phone)** that is within the possession, custody, or control of US Cellular.

<u>ATTACHMENT B</u>

Particular Things to be Seized

All information about the location of the **(414) 852-7994 (Target Cell Phone)** described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of the **(414) 852-7994 (Target Cell Phone)** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of US Cellular, US Cellular is required to disclose the Location Information to the government. In addition, US Cellular must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with US Cellular's services, including by initiating a signal to determine the location of **(414) 852-7994 (Target Cell Phone)** on US Cellular's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate US Cellular for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).